# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **DEMETRIUS WEBB,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Case No:** |
| v. | ) **2:23-cv-01098-RDP** |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| **CITY OF HOMEWOOD,** | ) |
| **ALABAMA, CHIEF NICHOLAS HILL** | ) |
| **In His Individual Capacity,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## SECOND AMENDED COMPLAINT[1]

Plaintiff **Demetrius Webb** ("Plaintiff" or "Webb" or "Capt. Webb") brings this civil action for relief and damages against Defendants **City Of Homewood, Alabama** ("Homewood") **and Chief Nicholas Hill, in his individual capacity, (**"Chief Hill"), based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. This employment discrimination case against Defendants arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m), *as amended* in

---

[1] This Second Amended Complaint is filed with leave of the Court. (Doc. 25).

1

1991 ("Title VII"); and 42 U.S.C.A. §§ 1981 and 1983. Plaintiff Webb, an African-American who was a Captain in the Homewood Fire Department ("Homewood FD" or "the Department"), alleges under Title VII that race was a motivating factor in Homewood's failure to promote him to the rank of Battalion Chief, and brings a claim under §§ 1981 and 1983 that Chief Hill, acting under color of state law in his individual capacity, retaliated against Capt. Webb for opposing racially discriminatory promotion practices by wrongfully declaring him physically ineligible for duty. Capt. Webb seeks back pay, front pay, and lost benefits, including the cost of health insurance; compensatory damages for mental anguish and emotional distress; punitive damages to the extent allowed by law; and his attorneys' fees and costs of litigation.

## THE PARTIES

2. Capt. Webb is a citizen of the United States and resident of Jefferson County, Alabama. During the time of the events alleged in this complaint, he was employed as a firefighter in the Homewood FD.

3. Defendant Homewood is a municipality in Jefferson County incorporated by the laws of the state of Alabama.

4. Chief Hill, at all times relevant to this complaint, was the Chief of Homewood FD and acted under color of state law with respect to the challenged employment actions alleged under 42 U.S.C.A. §§ 1981 and 1983.

## PERSONAL JURISDICTION

5.      Homewood and Chief Hill were served the original complaint in this matter through proper process at the location of Homewood's City Hall at 2850 19th St., Homewood, AL, 35209.

## SUBJECT-MATTER JURISDICTION AND VENUE

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

7.      Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in, and the alleged events and unlawful conduct giving rise to the claims occurred in, this district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On March 28, 2021, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") against the Department, alleging race discrimination under Title VII. *See* Ex. A. Plaintiff's Right-to-Sue letter was issued on May 23, 2023, and his Title VII claim is initiated prior to his statutory deadline of 90 days. *See* Ex. B.

## **FACTUAL ALLEGATIONS**

**Failure to promote**

9.   Capt. Webb served 36 years as a firefighter for the Homewood FD and was the second African-American hired in the Department's history.

10.   The Homewood FD has remained a monolithically white workplace, to the point that <u>two or fewer</u> African-Americans have been hired out of a total pool of 40 hires since 2013, a stunningly improbable result for a diverse community that roughly matches the African-American share of the population in the United States.

11.   In the history of Homewood FD, a total of nine black individuals have been hired as firefighters in the past 50 years, only two of whom have ever reached the senior-level rank of Lieutenant or above.

12.   As of the time this lawsuit is filed, upon information and belief, two African-Americans are employed as firefighters by Homewood FD, out of a total of 70 firefighters.

13.   Webb did not advance to the position of lieutenant until 2007, culminating a 20-plus-year stint in which less experienced and less capable white firefighters were repeatedly promoted past him.

14.   In 2017, Homewood FD created a new senior leadership rank of Captain and posted four Captain slots for selection.

4

15. Homewood is a municipality that relies on the Jefferson County Personnel Board ("Personnel Board") to create a promotion process for its public safety employees, including firefighters. The process works in this manner: Firefighters interested in officer-level promotion must take a proficiency test and score above 70% correct answers. The test score is weighted with the number of years of service in the immediate rank below to produce a final numerical score. The minimum service time is two years in the prior ranked position.

16. The list of qualified candidates for promotion to the rank of Captain in the 2017 promotional cycle consisted of five candidates—three whites and two blacks—for the four newly created slots.

17. Then-Lt. Webb was one of five internal candidates ranked by the Personnel Board as eligible for promotion to Captain.

18. The list of candidates was forwarded to then-Chief John Bresnan for interviews. He followed the Personnel Board's recommended "blind" process, in which the individual proficiency test scores of the finalists are not shared with ultimate decision-makers.

19. Despite the fact that Webb had the longest track record of service both as a Lieutenant and as a member of the Department, Webb was the sole candidate in the list of eligible candidates not selected for one of the four Captain positions. Three less experienced white candidates were selected over Webb.

20. Pursuant to Personnel Board policies, the list of eligible candidates for promotion remained intact for approximately one year, and when a vacancy opened in 2018, Webb ascended to the rank of Captain.

21. In the summer of 2020, another vacancy emerged for one of the four senior-level Department positions that are referred to as Battalion Chiefs, who report directly to the Fire Chief and function as part of his executive leadership team. The specific position was Shift Battalion Chief.

22. Each of the four Battalion Chiefs is responsible for overseeing a specific area of functional responsibility. Shift Battalion Chiefs exercise oversight of personnel and performance on their respective shifts. Each Battalion Chief is paid approximately $20,000 more than the next highest rank of Captain.

23. Chief Hill, who is white and became Homewood's Fire Chief in 2019, chose to appoint a white Captain, Davis Everson, to the role of interim Battalion Chief, passing over Capt. Webb, who expressed an interest in serving in the interim role.

24. Everson, as of the fall of 2020, had 15 fewer years of experience with the Homewood FD than Webb, and one less year of experience as Captain than Webb. Moreover, while Webb had approximately 13 prior years of experience as a Lieutenant, Everson had only three years of prior experience as a Lieutenant.

25. Webb had also served periodic stints as a relief, fill-in shift commander since 2008—directly relevant experience that Everson lacked.

26. Chief Hill did not follow the normal interview protocol for Battalion Chief selections, which during prior years consisted of the Fire Chief and the other Battalion Chiefs convening a formal session in which candidates were questioned about program management and problem-solving skills.

27. In lieu of the usual protocol, Chief Hill did not conduct formal candidate interviews and instead invited Capt. Webb for an informal one-on-one exchange, in which Chief Hill posed a sole generic question as to what made Capt. Webb qualified to be a Battalion Chief.

28. While dispensing with the formal interview process that traditionally has been the core of selections for senior Homewood FD positions, Chief Hill also introduced a new element into the Battalion Chief selection process: a multi-tiered "ranking" that purports to measure experience in approximately 35 facets of firefighter duties.

29. The new formula Chief Hill implemented does not measure proficiency or aptitude, as does the testing for promotions to Captain; nor does it evaluate the depth of the candidate's experience. The formula does not compensate for the fact that the relative job responsibilities of ranking officers has varied over the past 20 years as the Department has grown in size.

30. The newly configured test for Battalion Chief selections at the Homewood FD is a textbook method of rigging a selection process to devalue seniority and mitigate substantial gaps in qualifications, which operated to the detriment of an exceptionally experienced black candidate and to the benefit of a lightly qualified, inexperienced white candidate.

31. On or about October 11, 2020, Everson was formally promoted to the role of Shift Battalion Chief.

**Retaliatory mistreatment**

32. In late 2020 and early 2021, Capt. Webb began to explore the possibility of legal options to challenge Homewood FD's failure to promote him, including the prospect of filing a charge of discrimination with the EEOC.

33. In late December 2020, Capt. Webb contracted Covid-19 and was required to take an extended two-month medical leave to recover.

34. Given the duration of his medical leave, Capt. Webb was directed to obtain a fit-for-duty physical from both his personal physician and from one of the physicians at the Occupational Health Clinic at St. Vincent's Hospital, who are contracted to perform medical examinations for public safety personnel in Homewood.

35. On or about February 24, 2021, Capt. Webb completed the requisite physical exams and was given clearance to return to his duties with no restrictions.

36. On March 10, 2021, Capt. Webb initiated the charge intake process at the EEOC.

37. During mid March 2021, as the early stages of the EEOC process unfolded, Capt. Webb shared with multiple colleagues at Homewood FD that he was filing a claim of discrimination with the EEOC.

38. On or about March 23, 2021, Capt. Webb was suddenly notified by the Department that he needed to take another physical exam administered by a second St. Vincent's doctor in the Occupational Health Clinic. In the intervening month, he had experienced no symptoms of Covid-19 or any other health difficulties.

39. To Capt. Webb's knowledge, requiring a third physical examination after a return from medical leave in the absence of any signs of continued impairment was unprecedented.

40. Later in the day on March 23, Capt. Webb complied with the order to receive a third physical.

41. Capt. Webb's physical on March 23 included an electrocardiogram ("EKG") and a spirometry test that measures pulmonary functioning, such as the capacity to breathe air in and out of the lungs.

42. The physician performing the physical, Dr. C.B. Thuss, Jr., informed Capt. Webb that he presented as a robust, healthy individual and that there were no apparent physical limitations on his ability to do his job.

43. On March 28, 2021, Capt. Webb filed a formal charge of discrimination with the EEOC.

44. The EEOC's regulatory guidelines require that entities charged with discrimination receive notice within 10 days of a charge being processed. 29 C.F.R. § 1601.14(a). Homewood likely would have received notification of Capt. Webb's charge on or about April 7, 2021.

45. On April 22, 2021, Capt. Webb was informed by Chief Hill that he was being relieved of duty because Dr. Thuss had concluded that Capt. Webb was unlikely to pass a new strength and endurance test that Homewood FD was adopting for firefighters because of indicators from the March 23 physical of diminished breathing capacity and "borderline" EKG results.

46. Homewood FD had issued verbal and written guidance to its firefighters in or about February 2021 that a failure to pass the new physical fitness test would not be a basis for termination or any adverse employment action, and that the Department would provide assistance or treatment to any firefighter who failed to pass the test.

47.     The written narrative from Capt. Webb's third physical examination does not diagnose any actual heart or pulmonary disease. To the contrary, the physician's notes are ambiguous at best, describing "slight" and "minor" deviations that "*could be* an indicator of ischemia or left ventricular overload," and a "*possible* decline in function" that "*may* represent an early marker" of pulmonary disease (italics added).

48.     The narrative pointedly does not in any manner declare Capt. Webb unfit for duty and suggests only that he receive additional cardiological and pulmonary evaluation prior to taking the new physical fitness test.

49.     The directive from Chief Hill relieving Capt. Webb of duty, based on a theoretical possibility of underlying factors that <u>might</u> have impeded his success on the Department's new physical fitness test, was fundamentally at odds with Homewood FD's policies, including its directive that the threshold for removal from duty was a determination that a firefighter <u>could not</u> perform his essential job functions.

50.     In addition to the order relieving him of duty, Capt. Webb was instructed that he would need to bear the expense of additional testing, a departure from Homewood FD's standard practice of bearing the expense of work-related medical clearance examinations.

51. Chief Hill's decision to involuntarily sideline Capt. Webb was tantamount to an indefinite administrative leave of an open-ended duration, particularly given the vague parameters of the conclusions from the third physical. Precisely what degree of medical certainty would have been sufficient for Capt. Webb's reinstatement was, and remains, unclear.

52. Chief Hill's de facto administrative leave of a firefighter who had not been declared unfit for duty or in any immediate risk has all the earmarks of a search for some rationale to remove Capt. Webb, as opposed to the neutral enforcement of the Department's existing policies.

53. Chief Hill's removal of Capt. Webb in the aforementioned circumstances reflected the kind of arbitrary exercise of the Chief's decision-making authority that is probative of a retaliatory intent.

54. Given the lack of a clear pathway to reinstatement, Capt. Webb subsequently resigned from the Department.

55. Capt. Webb's discriminatory and retaliatory treatment by Homewood and Chief Hill has caused him emotional distress, mental anguish, and humiliation.

56. Capt. Webb has continually failed to obtain employment comparable in income and scope to his position as a senior officer in the Homewood PD, which has cost him significant lost wages and benefits.

## COUNT I

## RACE DISCRIMINATION

**(against Defendant City of Homewood, Alabama)**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m))**

57.     Plaintiff incorporates by reference paragraphs 1-56 as if fully set forth herein.

58.     Plaintiff, an African-American, was a member of a protected class who was qualified for and applied for the position of Battalion Chief that Defendant Homewood sought to fill, and was rejected despite his qualifications, with the position ultimately being filled by an individual outside Plaintiff's protected class who was less qualified.

59.     Given the substantial gap in qualifications between Plaintiff and the selected candidate for Battalion Chief, and Homewood's deviations from its standard protocols for promotion, it can plausibly be inferred that Plaintiff's race was at least a motivating factor in Homewood's failure to promote him to the position of Battalion Chief in October 2020, even if other factors also motivated Homewood's actions.

60.     As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay and front

pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II

### RETALIATORY MISTREATMENT

**(against Defendant Chief Nicholas Hill, in his individual capacity)**
**(42 U.S.C.A. § 1981 and § 1983)**

61.   Plaintiff incorporates by reference paragraphs 1-56 as if fully set forth herein.

62.   Plaintiff engaged in protected activity under 42 U.S.C.A. § 1981 by opposing racially discriminatory conduct through the filing of a charge of race discrimination with the EEOC.

63.   Plaintiff's protected activity was a but-for cause of Defendant Hill's retaliatory actions, which included subjecting Plaintiff to a successive physical examination without a valid medical reason and removal of Plaintiff from active duty in April 2021.

64.   Defendant Hill's retaliatory actions well might have dissuaded a reasonable employee from engaging in protected activity, and therefore constitutes retaliatory mistreatment.

65.   Defendant Hill's retaliatory conduct in violation of § 1981 occurred while he was acting in his individual capacity under color of state law as the Fire

Chief for Homewood, Alabama, and said conduct violated a clearly established statutory right under § 1981 to be free from retaliation for opposing race discrimination.

66. Plaintiff asserts his § 1981 retaliation claim pursuant to 42 U.S.C.A. § 1983.

67. As a result of Defendant Hill's unlawful retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

68. Defendant Hill engaged in retaliatory practices toward Plaintiff with malice or with reckless indifference to Plaintiff's federally protected rights, and Plaintiff is therefore entitled to punitive damages. 42 U.S.C.A. § 1981a(b)(1).

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

- A. Back pay, front pay, and lost benefits;
- B. Compensatory damages to the extent allowed by law;
- C. Punitive damages;
- D. Attorneys' fees and costs of litigation;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable, declaratory, and monetary relief as the Court deems just and proper.

Respectfully submitted the 26th day of February, 2024.

**HKM Employment Attorneys LLP**

<u>s/Artur Davis</u>
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com


**Attorney for Plaintiff Demetrius Webb**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on February 26, 2024, Plaintiff's Second Amended Complaint was served electronically through the Court's CM/ECF filing system upon the attorneys of record for Defendants City of Homewood and Chief Nicholas Hill, listed below:

Wayne Morse
Michael J. Kendrick
**Waldrep, Stewart, and Kendrick LLP**
2850 19th St. South
Suite 370
Homewood, AL 35209

Tel: 205-254-3216
morse@wskllp.com
kendrick@wskllp.com